CITY OF DALLAS V. CHARLEY PRIOLO ET UX.

No. A-2950. Decided June 20, 1951.
Rehearing overruled July 18, 1951.
Second Rehearing overruled Oct. 3, 1951.
(242 S. W., 2d Series, 176.)

424

H. P. *Kucera*, H. *Louis Nichols and Jon H. Shurette*, all of Dallas, for petitioner.

*Wm. Andress, Jr.*, of Dallas, for respondent.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

The City of Dallas condemned a strip of land approximately 30 x 60 feet to extend and widen Dolphin Road at Haskell Avenue. The strip condemned was the open space between the old street line and the front entrance of a building owned by respondent Priolo and occupied and used by him as a grocery store and liquor store. The condemned portion provided seven head-in parking places in front of his liquor and grocery stores. In answer to special issues the jury found that the market

value of the part taken was $1,200.00; that the market value of the part not taken was $30,000.00 before the taking, and $28,200.00 after the taking; that Priolo suffered temporary damages from loss of profits during the widening of the road in the sum of $326.00; and that he would suffer no permanent loss of profits as a result of the taking. Upon the verdict, judgment was rendered for the total sum of $3,326.00. Priolo appealed, and the City filed cross assignments, complaining of the item of $326.00 as temporary damages. The cross assignments were sustained and Priolo does not assign any error here to that ruling. We, therefore, do not have it before us for decision. The case was reversed by the Court of Civil Appeals and remanded to the trial court on its ruling that the trial court erred in excluding the testimony of a "business opportunity expert," who would have testified to the fair market value of the businesses on the premises before and after the taking, the Chief Justice dissenting. 234 S. W. 2d 1014.

In order to test the correctness of that ruling of the Court of Civil Appeals a rather detailed statement of the proceedings in the trial court is required. To establish the amount of his damages Priolo placed upon the witness stand Arthur Wolf, a real estate dealer with much experience in appraising Dallas property. The witness testified that he was familiar with Priolo's property, with the neighborhood in which it is located, and with the volume of business done by Priolo. He was then permitted to state his opinion as to the value of the strip taken and the lessened value of the land and the building not taken. Questioned by Priolo's attorney as to the factors which went into the values testified to by him, he stated that there were several factors, among them being the number of people living within the vicinity of the business, the parking facilities, the uses to which the property can be put, and the income therefrom. He testified that the highest and best use for Priolo's property was that for which it was presently being used. At considerable length he testified as to the value of parking space; that his estimate of value was based, in part, on figures given him by Priolo that 50 per cent. of the customers came in cars, and that there would be a 50 per cent. or greater loss of these customers; that future loss of business as a result of the loss of parking space was one element in his valuation; that the amount of business has considerable bearing on the rent that a tenant would pay, and that rental value is an element in fixing market values; that the income was a basis for valuation; and that the theory of replacement value and depreciation would result in the same figures, since it would become neces-

sary to depreciate the value of the remaining land and building a great deal more because the land and building would sell for less with no parking space in front. In effect, this witness, who was called by Priolo, testified that the lessened market value of the portion of the lot not taken was due to a falling off of Priolo's business. There is no testimony whatever that the building and the portion of the lot not taken were damaged in any other way than in their use. Damage to Priolo's business because of the taking of the parking space in front of his stores was made the principal basis of the opinion of the witness. That evidence was before the jury, and we must conclude that it was considered by the jury in answering issues 2 and 3 submitting the questions of the value of the land remaining before and after the taking. In fact, no other basis than that for determining the values of the land remaining was suggested by that witness or any other witness for Priolo.

Priolo then placed upon the witness stand Joe Cole, who testified that his business was to sell business opportunities. This question was propounded to the witness:

"Now, it is in evidence in this case that the grocery store and liquor store owned by Mr. Priolo would show a gross volume of sales in 1949 of $80,390.34, with a net operating profit of $17,147.42. That more than one-half of his customers came in cars and that the location was on Dolphin Road at South Haskell, and, after—there was space available for off-street head-in parking for seven (7) cars—do you know what the fair market value—fair cash market value of those business be in Dallas County, Texas, on October 10th, 1949?"

The court sustained the City's objection to the question, and the witness was not permitted to answer it. The Court of Civil Appeals held that the trial court erred in that ruling, and upon that ground alone reversed and remanded the case. In this we think the Court of Civil Appeals erred.

■ As we understand the opinion of the Court of Civil Appeals the holding was that the evidence should have been admitted upon the issue of whether and to what extent the market value of Priolo's property remaining after the taking had been depreciated. The opinion quotes from the opinion in Milam County v. Akers, 181 S. W. 2d 719. It was held in that case, and we approved the holding by our refusal of an application for writ of error therein, 142 Texas 721, that where the ownership of land, improvements and business conducted thereon are in the same person evidence of resulting injury to the business is admissible, not as a separate item of damage, but as affecting the

market value of the remaining land and improvements for the uses to which they were adapted and were being put. That was the theory upon which the testimony of the witness Wolf was admissible. The theory upon which the hypothetical question was propounded to the witness Cole was not to establish one of the factors in estimating the value of the part remaining, but was to establish a separate and independent item of recovery. This is made manifest by the record. Priolo requested the court to give in charge to the jury special issues submitting the question of the depreciated market value of his grocery and liquor business, exclusive of the land and improvements thereon, and the assignment of error brought to the Court of Civil Appeals was that the trial court was in error in excluding this testimony and in refusing to submit the requested issue thereon. The trial court did not err in refusing to submit the requested issue, and therefore did not err in refusing to admit the proffered testimony.

■ For another reason there was no error in the trial court's ruling. Since the damage to Priolo's business was the principal, if not the only, element considered in determining the market value of the land not taken, the court did not err in refusing to submit that same element as a distinct item of recovery. A judgment for damages upon an answer to that issue favorable to Priolo would have allowed a double recovery. We overrule the holding of the Court of Civil Appeals on this question.

■ It now becomes our duty to examine the brief filed by Priolo in the Court of Civil Appeals for the purpose of determining whether the judgment of that court should be affirmed on some other ground properly presented in that brief. Cox, Inc., v. Humble Oil & Refining Co. (Comm. App.), 16 S. W. 2d 285; Vanover v. Henwood, 136 Tex. 348, 150 S. W. 2d 785. Turning to the points there presented we find that the first point complains of special issues Nos. 2 and 3, which called upon the jury to determine the market value of Priolo's tract of land, exclusive of the strip condemned, immediately before and immediately after the taking. The record discloses that no objection whatever was made to special issues Nos. 2 and 3, and no request for any instructions regarding the elements which the jury might consider in answering them. The only objections made by Priolo to the court's charge were, first, that it failed to submit an issue upon the fair, cash market value of the grocery and liquor business as distinguished from the real property, and, second, to the form of special issue No. 7, which latter objection was sustained. The record does disclose that Priolo re-

quested special issues substantially like those in the court's charge, except that the word "property" was used instead of "land." Rule of Civil Procedure No. 274 provides: "A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection." Assuming that the requested charges were more accurate than those given, a request to give them not coupled with any objection to the form used by the court will not be given effect as an objection to the issues as given. Isbell v. Lennox, 116 Tex. 522, 295 S. W. 920; C. H. Mountjoy Parts Co. v. Perfect Circle Co., 119 S. W. 2d 186; Blezung v. Owl Taxi, 70 S. W. 2d 288; 41 Tex. Jur., p. 1065, sec. 253. The point is overruled.

■ Another point presented to the Court of Civil Appeals assigned as error the trial court's ruling upon the admissibility of certain evidence. A witness for the City gave his opinion that the market value of the remainder of Priolo's tract immediately after the taking of the strip by the City was increased by the improvements. The question propounded to the witness called upon him to exclude the increase in value and decrease in value by reason of benefits or injuries received in common with the community generally and not peculiar to Priolo and connected with his use and enjoyment of his tract of land. On cross-examination the witness stated that he could not tell of any benefits that the Priolo property received that other property similarly situated would not receive. Motion was then made that the witness' testimony be stricken on the ground that he was testifying to community benefits only. The court did not err in overeruling the motion to strike. A community may receive general benefits from the constructing or improving a highway, but the owner of property adjacent to the highway may suffer an injury or receive a benefit different from that of the community as a whole. In Gulf, C. & S. F. Ry. Co. v. Fuller, 63 Texas 467, 472, this court approved the following charge: "* * * if you further believe from the evidence that by reason of this improvement plaintiff's property has been enhanced in value, and that this enhancement in value is equal to or greater than any depreciation caused by the construction and operation of said road and the moving of trains thereon, then you will find for defendant." In City of Dallas v. Firestone Tire & Rubber Company, 66 S. W. 2d 729 (writ refused), it was held that the owner received special benefits because of the widening and straightening of the street abutting its business. That was not a condemnation suit, but did involve the question of special benefits. The opinion pointed out that just because other businesses along the street in the same category got the

same benefit would not prevent the benefits derived by the appellee in that case from being special. The community generally did not receive the same benefits that the appellee received in that case. Priolo's property was at a point where Dolphin Road made a jog, and by taking the strip from the front of his lot the City was able practically to eliminate the jog and provide for a free flow of traffic by his place of business on a wider and better type of pavement. It cannot be held as a matter of law that a special benefit was not thereby conferred upon him.

As indicated above, a special issue was submitted to the jury calling for a finding on the question of loss of future profits by Priolo. Since the jury answered that there would be no loss of such profits, no question was presented by the City to this court for decision with respect thereto.

Our conclusion is that we cannot affirm the judgment of the Court of Civil Appeals upon any point or assignment presented to it. It is accordingly ordered that the judgment of the Court of Civil Appeals be reversed and that of the trial court affirmed.

Opinion delivered June 20, 1951.

### ON REHEARING.

■ After stating in our original opinion that the Court of Civil Appeals sustained the cross assignment of the City complaining of that portion of the judgment of the trial court awarding Priolo $326.00 as temporary damages, and that Priolo assigned no error in this court to that ruling, we, nevertheless, entered an order reversing the judgment of the Court of Civil Appeals and affirming that of the trial court. Upon having the matter called to our attention on rehearing, it is apparent that our order should be modified, and the same is hereby modified, to read as follows:

The judgment of the Court of Civil Appeals in so far as it reduced the recovery in the trial court in the amount of $326.00 is not disturbed; in other respects it is reversed and the judgment judgment of the trial court as reduced by the Court of Civil Appeals is affirmed.

Opinion delivered July 18, 1951.