**TEXAS EMPLOYERS' INSURANCE
ASSOCIATION, Petitioner,**

v.

**Kenneth Ray JONES, Respondent.**

No. A–10628.

Supreme Court of Texas.

July 14, 1965.

Hardeman, Smith & Foy, San Angelo, for petitioner.

Warren Burnett and Robert D. Pue, Odessa, for respondent.

NORVELL, Justice.

This is a workmen's compensation case. The jury found that the injury sustained by the workman, Kenneth Ray Jones, was confined to his right leg; that he suffered a temporary total loss of the use of such leg for nine weeks and that he sustained a 10% permanent partial loss of use of the leg. The judgment based upon this verdict was reversed by the Court of Civil Appeals upon the ground that the issue of total loss of use of the leg had not been properly submitted to the jury. 386 S.W.2d 615. We reverse the judgment of the Court of Civil Appeals and affirm the judgment of the District Court.

The appeal turns upon the sufficiency of an objection to the trial court's definition of "total loss of use." Rule 274, Texas Rules of Civil Procedure provides that:

"A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection. * * *"

The trial court gave the following definition:

"By the term 'total loss of use' of a member is meant that the member during any given period of time does not possess any substantial utility as a part of the body for the purposes of work."

The plaintiff-respondent made the following objection to this definition, viz.:

"Plaintiff objects to the definition of 'total loss of use' as a definition herein, and specifically requests the court to give the definition approved by the Supreme Court in the case of Seabolt v. The Travelers Insurance Company, for the reason that it fairly and reasonably submits total loss of use of a member."

In Travelers Insurance Company v. Seabolt, 361 S.W.2d 204 (Tex.1962), this Court considered the contention that the evidence, as a matter of law, did not support a jury's finding that Seabolt's injury had resulted in the "loss of use of his hand." See Article 8306, § 12, Vernon's Ann.Civ.Stat. We held that the words "loss of use" as used in the statute meant "total loss of use," and that:

"A total loss of the use of a member exists whenever by reason of injury, such member no longer possesses any substantial utility as a member of the body, or the condition of the injured member is such that the workman cannot procure and retain employment requiring the use of the member." [1]

When we read the pertinent parts of the record which are above set out, it is clear

that plaintiff's objection to the trial court's definition consists of nothing more than a general objection, i. e., a statement that "plaintiff objects to the [trial court's] definition of total loss of use as a definition herein," coupled wtih a request that the trial court submit the definition contained in the Seabolt opinion, in lieu thereof.

█ While it may be that sometimes a requested definition or explanatory instruction may be considered to explain somewhat loosely worded expressions contained in an objection, it has long been a rule of practice in this State that a general objection of the species we have here is in legal contemplation no objection, and that a mere request to submit a different definition than that proposed by the trial court cannot be considered as an objection pointing out distinctly the matter to which a litigant objects and the grounds of his objection.

In Isbell v. Lennox, 116 Tex. 522, 295 S.W. 920 (1927), the Court considered an objection worded as follows:

"The plaintiffs excepts and objects [sic] to the court giving, in charge to the jury, the following portions of the charge, to wit."

This statement of objection was followed by a paragraph of the court's charge.

It was held that this general objection was nugatory. It was stated in the opinion that:

"This statute [2] was designed to correct a very important handicap or evil in the trial of cases. Its purpose in requiring the parties or their attorneys

1. The plaintiff also made the following request of the trial court which was refused:
   "Comes now plaintiff and requests in due form and manner the Court to submit to the jury the following special issue [definition]:
   "By the term 'total loss of use,' as used in this charge, is meant that whenever by reason of injury a member no longer possesses any substantial utility as a member of the body, or the condition of the injured member is such that the workman cannot procure and retain employment requiring the use of the member."
   This suggestion was in effect a second request to submit the Seabolt definition.

2. Article 2185, R.S.1925, which relates to objections to the court's charge as does Rule 274.

to present to the court their objections to the charge clearly is that the party objecting must apprise the court of the error in his charge with a view to its correction.

"The objection must point out to the court the error complained of. If it fails to do that, it does not meet the purpose and requirement of the statute and is no objection at all."

As bearing upon the contention that a requested charge could be considered as supplying an objection this Court in the Lennox case expressly approved the holding of the Court of Civil Appeals that:

"[A] party who has not objected to the main charge to the jury has no right to complain of the refusal of the court to give a requested special charge inconsistent with or contradictory of the main charge." (224 S.W. 524)

Numerous authorities were referred to by the Court as supporting its holding and the Lennox case has subsequently been cited with approval upon the point at issue. In Southern Underwriters v. Schoolcraft, 138 Tex. 323, 158 S.W.2d 991 (1942), it was said that:

"[I]t was the duty of the insurer, if it desired to have that question reviewed on appeal, to specify in its objections to the charge the particulars in which same was incorrect and that duty was not discharged by requesting that the court submit the same questions in different forms. Art. 2185; Isbell v. Lennox, 116 Tex. 522, 295 S.W. 920; Loving County v. Higginbotham, Tex. Civ.App., 115 S.W.2d 1110; error dismissed."

Similarly, in City of Dallas v. Priolo, 150 Tex. 423, 242 S.W.2d 176 (1951), decided long after the Texas Rules of Civil Procedure became effective in the trial courts, it was said that:

"Rule of Civil Procedure No. 274 provides: 'A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection.' Assuming that the requested charges were more accurate than those given, a request to give them not coupled with any objection to the form used by the court will not be given effect as an objection to the issues as given. Isbell v. Lennox, 116 Tex. 522, 295 S.W. 920; C. H. Mountjoy Parts Co. v. Perfect Circle Co., Tex.Civ.App., 119 S.W.2d 186; Belzung v. Owl Taxi, Tex.Civ. App., 70 S.W.2d 288; 41 Tex.Jur., p. 1065, sec. 253."

The rule applicable here was succinctly stated in the recent case of Bell v. Missouri-Kansas-Texas Railroad Co. of Texas, 334 S.W.2d 513, 1. c. 517 (Tex.Civ.App.1960, ref. n. r. e.) as follows:

"[A] request for another and different charge is not a substitute for an objection which is insufficient or absent and does not properly call error tc the attention of the court."

While it is fairly obvious that the trial court's definition of "total loss of use" differs somewhat from that contained in the Seabolt opinion, this Court has never held that the failure to give an accepted definition of a term in haec verba, in itself, constitutes a reversible error. There are many forms and modes of expression. It may occur to us that the phrase, "possess any substantial utility as a part of the body for the purpose of work" does not embody or suggest exactly the same concept as the Seabolt phrase, "the condition of the injured member is such that a workman cannot procure and retain employment requiring the use of the member." Other varying meanings between the trial court's definition and that approved in Seabolt may occur to lawyers studying the two definitions. The point of the matter, however, is that no differences or variances in meaning were distinctly pointed out to the trial judge and he is not, under the authorities, required to lay the two definitions side by side and as-

certain for himself if there is a substantial difference between them, and if so, whether the giving of one and the rejection of another would operate to the prejudice of a litigant. The duty to "point out distinctly" is placed upon the litigant by Rule 274.

■ The respondent as the prevailing party in the Court of Civil Appeals has a point in his brief filed in that court which if sustained would call for an affirmance of the judgment of the Court of Civil Appeals. While this point was not considered by the intermediate court, respondent is entitled to have this Court pass upon it. City of Dallas v. Priolo, 150 Tex. 423, 242 S.W.2d 176 (1951).

■ Complaint was made of the conduct of petitioner's counsel during respondent's argument to the jury. Respondent contended that the injury to his leg affected and extended to his back and that he was entitled to compensation for a general injury. The respondent had been examined by a number of doctors but upon the trial no medical witnesses were called. Dr. Tull had examined respondent at his request and made a written report. During the trial, mention was made of this report and respondent's counsel stated that he would have no objection to petitioner's introducing said report in evidence. As Dr. Tull was respondent's doctor, this offer has some suggestion of an attempt to "out fair" an opponent before a jury. Before accepting this offer, petitioner inquired if Dr. Tull would appear as a witness and upon receiving an equivocal answer said he would wait and see if the doctor was produced as a witness.

Upon the argument of the case, respondent's attorney referred to Dr. Tull's report which, to use his words, petitioner's attorney "didn't want you to see and didn't offer," whereupon petitioner's attorney interrupted and said that if respondent's attorney wanted the jury to have the reports of Dr. Tull, Dr. Knight and Dr. Hunter, it would be satisfactory with him. (Dr. Knight and Dr. Hunter had apparently prepared reports for the insurance carrier.) Thereupon the following colloquy occurred:

> Respondent's attorney: "Could we stipulate that they carry them to the jury room to read them, your Honor?"
>
> Petitioner's attorney: "As far as I am concerned they can read what Dr. Tull said, if they can also read what Dr. Knight said and what Dr. Hunter said."
>
> Respondent's attorney: "Certainly we have no objection."

Respondent's counsel remarked that petitioner's counsel was "making an unusual procedure in not allowing me the right to cross examine the doctors," and afterwards objected to the conduct of petitioner's counsel and requested the court "to recall the jury and instruct them they may not consider for any purpose the evidence admitted after the close of the testimony and the close of the case in chief by both Plaintiff and Defendant." The court overruled this motion.

The occurrences which took place during oral argument were undoubtedly irregular. Whether they constituted error or not, we need not decide, for such error, if any, was clearly invited.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.