PUROLATOR COURIER CORPORATION, Appellant,

v.

RAILROAD COMMISSION OF TEXAS et al., Appellees.

No. 12505.

Court of Civil Appeals of Texas, Austin.

March 9, 1977.

Rehearing Denied March 30, 1977.

William T. Hall, Stayton, Maloney, Hearne & Babb, Austin, for appellant.

John L. Hill, Atty. Gen., Marvin F. Sentell, Asst. Atty. Gen., Austin, for Railroad Commission.

James M. Doherty, Doherty, Robertson & Maxwell, Austin, for Executive Courier Service of Texas, Inc.

SHANNON, Justice.

Over protest of appellant, Purolator Courier Corp., the Railroad Commission granted a limited common carrier certificate to appellee, Executive Courier Service, Inc. of Texas, to transport by courier certain materials on stated routes within the State. Appellant filed suit in the district court of Travis County appealing from the order entered by the Commission. Upon trial the court entered judgment that appellant take nothing.

In its order granting the certificate, the Commission found in part as follows:

"That the Commission in accordance with the Laws of the State of Texas has duly considered the issue of public convenience and necessity and has particularly considered the transportation services now available to and which have been rendered for the public within the involved territory, the service capable of being rendered by available transportation services and the demand for, or need of additional service, and has further particularly considered the territorial scope of the application as to the construction and state of repair of the highways of the State and whether the same would permit the use sought to be made by the applicant without unreasonable interference with the use of such highways by the general public for highway purposes, and has further given due regard to the probable permanence and quality of the service offered by the applicant, the financial ability and responsibility of the applicant, its organization and personnel, the character of the vehicles and the character and locations of terminals proposed to be used, and the experience of applicant in the transportation of the commodities involved in the application and the character of the bond or insurance which will be given to ensure the protection of the public;

"The Commission finds after considering all of the above in connection with the instant application, that the services and facilities of the existing carriers serving the territory or any part thereof are inadequate, that there exists a public necessity for the proposed service, and that the public convenience will be promoted by granting said application as set out below and permitting the operation of motor vehicles on the highways of this State as a motor common carrier for hire; and

"The Commission further finds that applicant is fit, willing and able, financially and otherwise, to institute and maintain the operation authorized herein and hereby; * * *"

Although appellant's principal point of error is that the district court erred in concluding that there was substantial evidence to support the Commission's order granting common carrier authority to appellee, there are other points claiming error in the admission of evidence.

In an effort to demonstrate support for the Commission's finding that appellee was financially able to institute and maintain

the authorized operation, appellee tendered exhibits purportedly showing its financial condition and the financial condition of its parent corporation. Appellant objected to the admission of those exhibits on grounds of hearsay and that the exhibits were not qualified under Tex.Rev.Civ.Stat.Ann. art. 3737e (1969). The exhibits tendered consisted primarily of balance sheets and income statements of the parent corporation.

Davis Morrison, president of appellee and the parent corporation, testified as to the identity and mode of the preparation of the financial statements. As president, he was familiar with the financial conditions of the companies. He testified that the financial statements were prepared by the corporations' certified public accountant from regularly compiled and maintained books and records of the corporations.

Appellee called Sherman Cole the certified public accountant who prepared the financial statements for appellee and the parent corporation from the internal business records of the two corporations. Cole testified that the financial statements correctly reflected the financial conditions for the dates and periods stated. Cole produced in court the general ledger sheets of the corporations from which the financial statements were prepared.

The financial statements were prepared from the records of the company which were kept by company personnel. Morrison testified that Merlene Hubbard, the bookkeeper and an officer of the company, had recorded the underlying facts from which the statements were prepared. Morrison further stated that Hubbard had been an employee for over five years and that such books and records kept by her were maintained in the ordinary course of business and are relied upon by the officers and directors of the company to reflect the correct financial posture of the company.

■ A summary of a business record is admissible and not subject to objection on the grounds of hearsay if the "underlying" records are admissible business records under Tex.Rev.Civ.Stat.Ann. art. 3737e. *Black Lake Pipe Line Co. v. Union Construction Co.,* 538 S.W.2d 80, 92 (Tex.1976), *Cooper Petroleum v. La Gloria Oil & Gas Co.,* 436 S.W.2d 889 (Tex.1969).

■ For the "underlying" records to be admissible, those records must be made in the regular course of business, at or near the time of the event, and "some employee or representative who either made or transmitted the information to another to record must have had personal knowledge of the act, event or condition." *Skillern & Sons, Inc. v. Rosen,* 359 S.W.2d 298 (Tex.1962).

■ Under the record, some of which we have set out, the district court could have reasonably concluded that the "underlying" records met the requirements of Tex.Rev. Civ.Stat.Ann. art. 3737e. As a result, the financial statements prepared from those records were properly admitted into evidence.

Appellant also complains of the admission into evidence of the personal financial statements of the president and vice-president of the parent corporation. These officers personally prepared their respective financial statements and each appeared and testified in the trial. Each officer testified that the respective financial statement correctly reflected his financial condition and net worth as of the date of the statements.

Appellant urges that the financial statements were inadmissible as hearsay. In that connection appellant points out that certain valuations appearing in the financial statements were based on sources not within the personal knowledge of the witnesses.

■ Testimony concerning entries on personal financial statements is by nature opinion testimony. In general, it is well established that the owner of property is permitted to give his opinion as to the value of the property. *Barstow v. Jackson,* 429 S.W.2d 536 (Tex.Civ.App.1968, no writ). The qualification of a witness to testify on the question of value is primarily to be determined by the trial court, and its ruling will not be disturbed unless it is so clearly wrong so as to show an abuse of discretion.

*Foley Bros. Dry Goods Co. v. Settegast,* 133 S.W.2d 228 (Tex.Civ.App.1939, writ ref'd). The fact that a witness's knowledge of values is derived from information furnished by others does not deprive the testimony of probative value. *Webb v. Mitchell,* 371 S.W.2d 754 (Tex.Civ.App.1963, no writ). The court properly admitted the financial statements into evidence.

■ Appellant's major argument is that the Commission's order granting the common carrier authority was not supported by substantial evidence. The case was tried without specific reference to the Administrative Procedure and Texas Register Act, Tex.Rev.Civ.Stat.Ann. art. 6252–13a (1975). No point of error is directed to the manner in which the case was tried, and, as a result, that matter is not before this Court, and is not considered.

■ An appeal from an order of the Railroad Commission is governed by the substantial evidence rule. *Trapp v. Shell Oil Co.,* 145 Tex. 323, 198 S.W.2d 424 (1946). As the Commission's order is presumed to be supported by substantial evidence, it was appellant's burden to overcome that presumption. *City of San Antonio v. Texas Water Commission,* 407 S.W.2d 752 (Tex. 1966). To set aside the order, it was appellant's burden to demonstrate that the evidence, as a whole, was such that reasonable minds could not have concluded to grant the certificate to appellee. *Trapp v. Shell Oil Co., supra.* Substantial evidence need not be much evidence, and though "substantial" means more than a mere scintilla, or some evidence, it is less than is required to sustain a verdict being attacked as against the great weight and preponderance of the evidence. Reavley, "*Substantial Evidence and Insubstantial Review in Texas,*" 23 Sw. L.J. 239, 241 (1969), *State Banking Board v. Proposed Central Park Bank of Dallas,* 522 S.W.2d 717 (Tex.Civ.App.1975, writ ref'd n. r. e.).

■ Before the judgment of the district court may be reversed, we must hold that the order of the Commission is not supported by substantial evidence and that the evidence so conclusively required a negative finding with respect to the application for the certificate that the Commission's refusal to make it was arbitrary or capricious. *Gerst v. Cain,* 388 S.W.2d 168 (Tex.1965). To the contrary, we are of the opinion that there existed substantial evidence at the time of entry of the Commission's order which would have supported the granting of appellee's application. The posture of the record being such, it follows that the order of the Commission granting the application should be given effect and that the judgment of the district court should be affirmed.

Appellant claims that, contrary to the Commission's finding, appellee lacks the financial ability to implement its proposal. Appellant stresses that appellee has never experienced a profit and that the liabilities of the company exceed its assets. Appellant claims in this regard, "Without more, this evidence conclusively shows that Appellee is utterly incapable of implementing its massive proposal."

Appellee is a subsidiary of Executive Courier Service, Inc., an Oklahoma corporation. The parent corporation has performed regulated courier transportation service in Oklahoma since 1970. Since 1973, appellee has operated an unregulated courier transportation service in the Dallas-Fort Worth area.

The history of the parent corporation shows an operating loss in the beginning of its operations, but a profit within four years. Since its inception the parent corporation has increased the number of vehicles, employees, and its operating revenues. The corporation is now operating profitably.

The parent corporation and appellee share common officers. In keeping with managements' projections, appellee has experienced operating losses since the start of its unregulated service in 1973. Nevertheless, appellee's management anticipates that its operation, similar to that of the parent corporation, will show a profit after a four-year period.

The evidence was that appellee will lease locations for and establish a number of of-

fice facilities over the State. Appellee's proposed service will begin with seventy-four passenger-type automobiles. Appellee will acquire a number of vehicles in addition to those which it already possesses by equipment-financing contracts. This manner of financing has been used successfully for the acquisition of vehicles currently operated by appellee and the parent corporation. The testimony was that the parent corporation would borrow the working capital necessary for appellee's operation. The members of the boards of directors of appellee and the parent corporation committed themselves to make personal guarantees necessary to secure the funds. Appellee placed into evidence letters of intent from two banks in Oklahoma to make the necessary financing available to appellee.

Texas Rev.Civ.Stat.Ann. art. 911b, § 9 (1964) does not set out with particularity the financing required of the applicant. Appellee placed before the Commission some evidence of the financial experience of its parent corporation and evidence of the financial aspects of its projected operations which were patterned upon the experience of the parent corporation. The decision as to the financial ability and responsibility must be made by the Railroad Commission. The courts may interfere with that decision only if there is no reasonable support for it in the record. *Texas Aeronautics Commission v. Braniff Airway, Inc.*, 454 S.W.2d 199 (Tex.1970). The evidence reasonably supports the Commission's order.

Appellant also claims that there was no substantial evidence to support the further conclusion that appellee will consistently provide the proposed service. Appellant says further that appellee's proposed schedules are impractical and in some instances would result in operations over the speed limit laws.

■ We agree with appellee's response to appellant's contentions that operational details of proposed new transportation service, absent the benefit of operational experience, cannot be stated with precision. All that is required of an applicant for new operating authority is that evidence be offered in sufficient detail to enable the Commission to determine the reasonable bounds of the proposed service and that such service will be instituted if authority is granted.

■ Although the record shows a difference in opinion between appellant's witnesses and appellee's witnesses as to what speed the courier fleet would have to travel under the proposed schedules, that difference is not ground for reversal of the judgment. This is particularly true in light of appellee's proposal to make necessary revisions in the schedules, consistent with customer requirements, where operating experience establishes that errors in time or mileage calculations occurred in the formulation of the schedules.

Appellant also claims that it maintained adequate service in Texas. In connection with this argument appellant claims that much of appellee's shipper and receiver testimony concerning appellant's inadequacy was hearsay, and hence not probative. Disregarding hearsay testimony, there is substantial evidence remaining showing appellant's inadequate service in late pickups, missed deliveries, late deliveries, inadequate schedules, and no scheduled services.

■ Finally, appellant contends that appellee's operation of a second courier company would have a substantial and adverse economic effect on appellant. Appellant's operating reports show appellant's economic position to be healthy and its growth in operations to be significant. Surely appellee's operation of a second courier service will result in some loss of business for appellant. There will probably be, at the same time, a corresponding reduction in appellant's operating expenses. Appellee points out, as well, that there is increasing growth in the volume of courier traffic. There was a reasonable basis for the Commission's finding that the approval of appellee's application would not have any material adverse effect upon appellant.

The judgment is affirmed.

Affirmed.