Henry J.N. TAUB, Appellant,

v.

**CITY OF DEER PARK, Appellee.**

**No. A14–90–00292–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

July 25, 1991.

---

Joe G. Roady, Houston, for appellant.

Marvin B. Peterson, Houston, P.B. Dover, Jr., Deer Park, Sheryl Sikes Roper, Houston, for appellee.

Before J. CURTISS BROWN, C.J., and MURPHY and CANNON, JJ.

## OPINION

MURPHY, Justice.

Henry J.N. Taub appeals from a judgment awarding him approximately one-half the amount at which special commissioners valued his property in condemnation actions filed in county court by the City of Deer Park, appellee. The eminent domain actions, which sought rights-of-way for street improvements and flood control, were transferred to district court and consolidated with Taub's suit to set aside the City Council's unanimous decision refusing Taub's request to rezone a portion of the tract from single-family to multi-family residential purposes. Taub also sought to enjoin the depositing of the special commissioners' awards totaling

$235,500. His application for a temporary injunction was denied, and Deer Park deposited the commissioners' awards on October 8, 1980, thereby fixing the date of taking. After a bench trial, the judge found the city's refusal to rezone Taub's property was a proper exercise of its police powers to benefit the public interest. The trial court awarded Taub $118,610.40, plus interest accrued from the date of taking, as full payment for the land taken. In 26 points of error, Taub complains that (1) Deer Park's refusal to rezone the property deprived him of its beneficial use without just compensation, therefore Ordinance 819 is unconstitutional as applied to his property; (2) the valuations were improperly based upon a use restricted to single-family purposes, and the trial court ignored testimony of damage to the remainder of the property; and (3) the judgment is replete with errors of form. We reverse and remand for entry of a corrected judgment.

Deer Park filed two eminent domain proceedings in 1978, seeking 2.4691 acres for street improvements and 14.5616 acres to construct drainage ditch structures, respectively, out of a 116.456 acre tract that Taub owned within the city limits of Deer Park. Taub filed an application to rezone the south 69.6684 acres of the parent tract from single-family residential (SF–1) to multi-family residential (MF–2). The north 49.55 acres of the tract had previously been rezoned from SF–1 to Industrial Parks–1.

At a meeting of the planning and zoning commission, a large number of Deer Park residents objected to Taub's rezoning proposal, and the commission voted unanimously to deny the application. At a joint public hearing of the commission and City Council, twenty-four citizens, including one representing several hundred residents who had signed petitions, spoke against the application. In addition, the city administrator stated that rezoning the property to allow multi-family housing would seriously impede Deer Park's ability to provide necessary city services; directors of various city departments agreed that a multi-family housing project would upset a well-planned program for fire and police protection, traffic control, water, sewage, and recreational facilities; and the superintendent of Deer Park schools stated that rezoning would detrimentally alter long-range planning for schools, building programs, bond issues, and students' education. Both the commission and City Council unanimously denied Taub's request.

Special commissioners, appointed by two county court-at-law judges, held valuation hearings and awarded Taub $18,500 for the street taking and $217,000 for the ditch taking. Taub timely objected and filed suit in district court.

■ First, we consider the constitutionality of Deer Park's zoning ordinance as applied to Taub's property. Zoning is an exercise of a municipality's legislative powers. *City of Pharr v. Tippitt*, 616 S.W.2d 173, 175 (Tex. 1981) (citations omitted). "If reasonable minds may differ as to whether or not a particular zoning ordinance has a substantial relationship to the public health, safety, morals or general welfare, no clear abuse of discretion is shown and the ordinance must stand as a valid exercise of the city's police power." *Id.* at 176 (citing *Hunt v. City of San Antonio*, 462 S.W.2d 536, 539 (Tex. 1971)). Taub has failed to show that the ordinance was not substantially related to public health, safety, and welfare. To the contrary, the evidence ·shows that (1) Ordinance 819 was adopted in 1971 in furtherance of Deer Park's comprehensive Master Plan; (2) the property had been zoned single-family since 1962; and (3) multi-housing development would drastically affect city services.

■ Taub contends that despite its benefit to a city's general welfare, an ordinance may be unconstitutional if it renders particular property "wholly useless" or causes a "total destruction" of the entire tract's economic value. *City of College Station v. Turtle Rock Corp.*, 680 S.W.2d 802, 806 (Tex.1984). A restriction is confiscatory if it renders the property "practically worthless." *City of West University v. Ellis*, 134 Tex. 222, 134 S.W.2d 1038, 1041 (1940). However, based on the SF–1 classification, the value of the land taken for street purposes and the value of its remainder was $7,000 per acre, both before and after the taking, according to Taub's own expert. The trial court agreed in its findings.

Taub adds that the SF–1 classification restricts the property to a use that cannot be economically feasible, thus the economic impact of refusing to rezone the property is *total.* Robert M. Atkinson, Jr., a civil engineer and surveyor, studied the economic feasibility of developing the SF–1 tract with a residential subdivision of homes priced between $60,000 and $75,000. Even leaving out many typical expenses and contemplating that the land would be "donated" to the project, as would be the case if an owner developed the property himself, Atkinson testified the project would "still be about $200,000 in the hole." Gavin P. Parrish, a land developer and home builder, reviewed the Atkinson report and concluded that the project "would leave little room for making any profit and in all likelihood there would be none." Such evidence, however, is insufficient to prove as a matter of law that *any* SF–1 development would not be economically feasible. For example, there is evidence that owners of neighboring property to the south were planning to build homes in the $100,000 range. Further, although Taub contends the property was not suitable for SF–1 development because the tract is encumbered by two pipeline easements that limit the number of lots and potential residences, the Atkinson report failed to consider whether a multifamily project would be feasible in light of Deer Park's claim that it would not be able to provide adequate city services for its residents. We overrule Taub's contention that the ordinance, as applied to his property, is unconstitutional.

■ In points of error nine and ten, Taub contends the trial court erred in fixing the date of taking as October 8, 1980, and denying his application for injunction. The Texas Property Code provides that after special commissioners award damages, a condemnor may take possession of the condemned property pending further litigation if it deposits that amount of money with the court. TEX.PROP.CODE ANN. § 21.021 (Vernon 1984). Depositing the amount of the award fixes the date of the taking. *Audish v. Clajon Gas Co.,* 731 S.W.2d 665, 669–70 (Tex.App.—Houston [14th Dist.] 1987, writ ref'd n.r.e.). Deer Park complied with the statute by depositing $235,500 with the registry of the court on October 8, 1980, thereby fixing the date of the taking. We decline Taub's invitation to fashion an exception to the statute in cases in which a constitutional question is raised. Points of error nine and ten are overruled.

■ Taub agrees that the street taking caused no damage to the remainder of his property. However, in points of error thirteen through nineteen, he contends the trial court erred in finding there was no damage to the remainder as a result of the ditch taking. First, he complains that he was deprived of the full value of the portion of the ditch adjacent to the tract zoned Industrial because Deer Park valued it at SF–1 rates. However, the record is clear that the adjacent property, taken for the ditch, was zoned SF–1, because the ordinance under which the northern portion of the tract was rezoned as Industrial specifically provided that it was to *abut* the proposed drainage ditch on the west and on the south. Second, he contends that the installation of the new drainage ditch destroyed previous access to the west and to the south for the Industrial tract, and previous access to the north and to the east for the SF–1 tract. He claims that he should be compensated in the amount of the cost of two bridges to restore previous access. Deer Park responds that following the ditch taking, the SF–1 tract retained access to 13th Street, and the Industrial tract retained access to Highway 225, while a bridge providing access from the SF–1 tract to the Industrial area and Highway 225 could pose a greater threat to residents of a hazardous material accident because of heavy truck traffic transporting volatile petrochemicals. Moreover, there is evidence to support the trial court's implied finding that any damage to the remainder of Taub's property may be offset by the special benefit it received from the installation of the ditch. TEX.PROP.CODE ANN. § 21.042(e) (Vernon Supp.1991). Before the drainage improvements, the property fell in the "short-term 100 year-flood plain." After the ditch installation, the property became "developable" in the 500–year flood plain. While drainage improvements were installed to benefit the public generally, the fact that placement of the ditch made

Taub's property "developable" is evidence of a significant benefit beyond its general benefit to the community at large. *See Haynes v. City of Abilene,* 659 S.W.2d 638, 641–42 (Tex. 1983). We overrule Taub's points of error regarding damage to the remainder.

 Finally, Taub complains that the judgment is replete with errors of form. A condemnation judgment should describe the property to be taken sufficiently to enable a surveyor to locate the property. The description must meet the same requirements as are necessary for a description in a deed. *City of Dallas v. Megginson,* 222 S.W.2d 349, 351 (Tex.Civ.App.—Dallas 1949, writ ref'd n.r.e.). Deer Park concedes a computing error in the amount awarded Taub in the judgment, but maintains that no harm results from alleged errors regarding the trial court's failure to describe the three tracts or to apportion the award between the two condemnation suits. Also harmless, according to Deer Park, is language in the judgment divesting Taub of title in land in which only rights-of-way were condemned and in granting rights-of-way for street purposes over property condemned for drainage purposes and vice versa. We hold that the judgment should be reformed to correct a computing error and to more definitely describe the property taken to correspond to the pleadings.

We reverse and remand the cause for entry of a corrected judgment.